GEORGE BRYAN and WILLIAM SMITH v. JOHN BRAD-
FORD and ANDREW GATEWOOD.

*In Chancery.*

George Bryan, on the 10th day of January, in the year 1780, obtained from the court of commissioners the following certificate, to-wit:

"George Bryan this day claimed a settlement and pre-emption to a tract of land, in the district of Kentucky, on the head of Cane run, including a spring which sinks, after running about 300 yards, near a pond, and about five miles from Bryan's station, by raising a crop of corn in the country, in the year 1776. Satisfactory proof being made to the court, they are of opinion that the said Bryan has a right to a settlement of 400 acres of land, to include the above location, and the pre-emption of 1,000 acres adjoining, and that a certificate issue accordingly."

And on the 17th day of February, in the year 1780, entered his certificate for settlement with the county surveyor, in the following words, to wit:

"George Bryan enters 400 acres of land, by certificate, etc., lying on the head of Cane run, including a spring, which sinks after running about 300 yards, near a pond, about five miles from Bryan's station."

And having obtained a pre-emption warrant, entered 986 acres by virtue thereof, with the county surveyor, on the 27th day of April, in the year 1780, in the following words, to-wit:

"George Bryan enters 986 acres upon a pre-emption warrant, joining his settlement on the head of Cane run, on the south and west sides."

And having surveyed the said settlement and pre-emption in the manner described on the connected plat, obtained patents for the same.

The said George Bryan sold 500 acres, part of his pre-emption, to a certain William McDonald, who sold the same to the complainant Smith.

Dominic Flanagan, on the 5th day of February, 1780, obtained

from the said court of commissioners the following certificate, to-wit:

"Dominic Flanagan, by John Todd, Jr., this day claimed a settlement and pre-emption to a tract of land in the district of Kentucky, on account of raising a crop of corn in the country in the year 1775, lying on Cane run, north of the pre-emption granted John Todd, Jr., assignee of Patrick Owens, to include an improvement at a sinking spring. Satisfactory proof being made to the court, they are of opinion that the said Flanagan has a right to a settlement of 400 acres of land, to include the above location, and the pre-emption of 1,000 acres adjoining."

And on the 3d day of March, 1780, entered his certificate for settlement with the county surveyor, in the following words, to-wit:

"Dominic Flanagan enters 400 acres by certificate, etc., lying on Cane run, north of the pre-emption granted John Todd, assignee of Owens, to include an improvement at a sinking spring."

And having assigned his pre-emption right to a certain Simon Kenton, the said Simon Kenton entered the same with the county surveyor, on the 22d day of March, 1784, in the following words, to-wit:

"Simon Kenton, assignee of Dominic Flanagan, enters 1,000 acres of land, by virtue of a pre-emption warrant, No. 2,426, lying on the waters of Cane run, beginning at the most north-east corner of a survey of settlement, made in the name of Dominic Flanagan, running south 70 east, 400 poles, to a buckeye and hickory sapling; thence south 20 west, 400 poles, to an elm; thence north 70 west, 400 poles, crossing Cane run, to a stake; thence north 20 east, 400 poles, to the beginning."

And the said settlement and pre-emption being surveyed in the manner described on the connected plat, the plats and certificates were assigned to the defendant, Bradford, to whom patents issued of earlier date than those of the complainant, Bryan.

The annexed connected plat, No. 26, was returned in this cause, of which the following is an explanation:

1 2 3 4, the complainant's settlement according to survey. 5 6 7 8 9, pre-emption do. do. The dotted lines, the said settlement and pre-emption according to the interlocutory decree. A B C D, Dominic Flanagan's settlement of 400 acres. C D E F, pre-emption do. of 1,000 acres, both according to survey. *a b c d,* Francis Patterson's pre-emption of 1,000 acres. *d c e f g h,* Nathaniel Evans', assignee of John Maxwell, pre-emption. *i j k l,* John Todd's pre-emption of 400 acres, assignee of Patrick Owens. *k l m n,* Christopher Greenup's 180 acres, treasury warrant. *o p q r,* part of Alexander McConnell's pre-emption. G H I K, part of Samuel McDowell's military survey of 2,000 acres. *A,* the head of Cane Run. *B,* Hall's spring.

The defendant, Bradford, before the commencement of this suit, had sold and conveyed a part of the land in dispute to the other defendant.

The complainants stated in their bill, that the complainant, George Bryan, had surveyed his settlement, so as to include the head of Cane run, and the spring called for in his location, and that he had also surveyed 958 acres of his pre-emption on the southwardly and westwardly sides thereof.

They also stated that they had been informed and believed, that the survey of the settlement under which the defendants claim, did not include the sinking spring and improvement called for in the location with the commissioners; and that the pre-emption had been surveyed so as to extend not only more than half the distance between the settlement survey of the complainant Bryan, and that of Flanagan, but also that the same was extended south 70 cast, 444 poles, whereas the entry only called for 400 poles; by reason whereof the said survey contained 110 acres more than called for by the entry.

The defendant, Bradford, denied by his answer, that the complainant had surveyed on the head of Cane run, and said his settlement lay to the north of Todd's pre-emption, as assignee of Owens; and that he was induced to believe it includes the sinking spring called for in his location with the commissioners.

He also stated that the lateness of the entry on pre-emption warrant, he conceived, could not affect his right; because he said the pre-emption warrant having miscarried, he entered a treasury warrant previous to the complainant's survey; and that as soon as the pre-emption warrant came to hand, it was precisely entered on the survey which had been made on the said treasury warrant.

The entry alluded to by the defendant in his answer, was made January 2d, 1783, and is in the following words, to-wit:

"Dominic Flanagan enters 1,000 acres on a part of a treasury warrant, No. 12,684, joining his settlement on Cane run, and joining a military claim of Samuel McDowell, and also joining a pre-emption of Francis Patterson, and to extend eastwardly for quantity; it being precisely to cover the land for which a certificate of pre-emption was granted to the said Dominic by the commissioners for the district of Kentucky."

The parties submitted the question of fact, as well as of law, to the court.

And the witnesses having been examined in court, no summary can be given of the testimony with any degree of correctness. It is therefore wholly omitted.

NICHOLAS for the complainant.—I will first inquire into the

nature of the complainant's claim, then into that of the defendant, and then compare them together.

*First.* The complainant's certificate calls to lie on the head of Cane run, including a spring which sinks after running about 300 yards, near a pond, and about 5 miles from Bryan's station, and the entry with the surveyor is the same as the certificate.

The service for which the claim was granted, is stated in the certificate to be, raising a crop of corn in the country, in the year 1776.

This is a proper foundation for a village right.

The calls of the certificate and entry being the same, no separate inquiry need be made, how the claim for settlement ought to have been surveyed.

"On the head of Cane run." The testimony produced by the defendant, to show that it is not the head of Cane run, which is included in Bryan's settlement survey, is improper, for it is not the best the nature of the case would have admitted.

The head of Cane run as contended for by the defendant, is not laid down on the plat, and certainly the use of plats is only to show that, in a more unerring manner, which might otherwise be shown by testimony. But I contend this is the head of Cane run. What was the situation of this country in 1780? There were different parties of improvers, who had given different names to the same water course, and each of them had an equal right to give the name. And the place was known to the people in one station by one name, and in another station by a different name.

The name then given by which this place was known in the station where the company of improvers resided must be considered as sufficient.

In old countries, where names have been long settled, a mistake in names, in a deed or will, where the proof is sufficient, will not prevent the thing devised or bequeathed from passing.

Here there can be no doubt that the place called for is included in the settlement survey.

Our witnesses say, that this place was called the head of Cane run at Bryan's station, where the company to which the complainant George belonged, resided. Bryan's station lies east of Hall's spring, and in going to their hunting ground from the station, they went by it.

But the testimony of the defendants' witnesses proves, that neither place was exclusively known by that name.

Samuel McMillin and Levi Todd say, they lived in Lexington,

and knew only the branch of Cane run which is nearest to Lexington, which they knew by the name of the head of Cane run. It was the same with the people of Bryan's station, they only knew the branch of Cane run that was nearest to them, and they knew it by the name of the head of Cane run.

But McMillin says, he remembers to have heard some people call that the head of Cane run, which is laid down on the plat.

If it stood on this call alone as explained by the testimony, the court would certainly deem it sufficient.

The next call is five miles from Bryan's station. This is an important call. It is said to be two and a half or three miles from Bryan's station to the head of Cane run, as contended for by the defendants and four or five to the place we claim. This is certainly explanatory of the first call, if it were otherwise uncertain, and would fix the complainant Bryan to the place he has surveyed.

The next call is including a spring, which sinks after running 300 yards near a pond.

This spring answers the description, and from the testimony respecting the chain of sink-holes making toward Elkhorn, it is natural to suppose Bryan did not believe the spring to be the waters of Cane run. For although it is proved, that the water from that spring has two or three times in six or seven years, run down by Stewart's, who lives on the waters of Cane run, does it follow that it is the waters of Cane run? But we prove this to be the place by the tree marked G B, by Morgan Bryan, who was shown it by the complainant Bryan, who claimed it as his spring and improvement, and by Wilcoxson who was shown it in 1779 or 1780, and requested by the complainant Bryan to attend to get it surveyed for him, which he did. Beside the defendants have agreed to the surveyor, that this spring answers the description. It is true there may be two springs answering the description ; but if there are, it was incumbent on the defendants to show the other.

The defendants say we ought to have surveyed on the head of the branch of Cane run nearest to Lexington.

This we could not have done and complied at the same time with the other calls, for it is two miles and a half or two miles and three-quarters from this spring. They have found another spring at Tandy's, which sinks, but it is yet a matter of doubt whether it communicates with Elkhorn or Cane run.

I will now endeavor to show from authorities, that the call for

8

the head of Cane run (although the branch we show is not, in fact, the head of Cane run) shall be sufficient to give a title to the complainants. 3 Com. Dig. 17 ; Treatise of Equity, 127.

Collateral proof allowed to make certain the person or thing intended to pass by will. , 1 Brown Ch. Rep. 477, 480, 341; 2 Pre. in Chan. 230 ; 2 Vern. 593.

If parole testimony is resorted to, to show an ambiguity, it may be met by proof to explain it.' 1 Brown Chan. Rep. 85.

Leasehold houses allowed to pass by a devise of freehold houses, the devisor having no freehold. 1 P. Wms. 287, 675.

Parole evidence to show where a man had two sons of the same name, which was meant. 2 P. Wms. 215; 2 Ves. 28; 1 Ves. 231.

Parole testimony will be admitted, where the descrption of the thing is uncertain, as well as where there are two of the same name. 1 Ves. 255, 256 ; Bull. N. P. 296, 297 ; 2 Vern. 517, 593 ; 1 Morg. Ess. 37, 38.

The same man may have two names, and take by either. Co. Litt. 3, a.

If any part of the description be certain, it shall be sufficient. 3 Com. Dig. 22, 332 ; Amb. 374, 375 ; Cowp. 97 ; 3 Atk. 136.

Such construction shall be given as is agreeable to the intent of the grantor, and where there are words inconsistent, they shall be rejected. 3 Atk. 136, 525 ; 1 Brown Ch. Rep. 118.

And this doctrine was recognized as applicable to such cases as the present, by the late supreme court, in the case of *Pawling* v. *Merewether's Heirs.*

The call then for the head of Cane run, is a good call, either as combined with, and explained by the other calls of the entry, or as explained by the testimony.

And parole testimony was properly introduced to show this place was called the head of Cane run, for the ambiguity was occasioned by the introduction of parole testimony on the part of the defendants to show another place.

I will examine the defendants' claim.

The certificate was granted for raising corn in 1775, and calls to lie north of the pre-emption granted to John Todd, Jr., assignee of Patrick Owens, to include an improvement at a sinking spring. As the defendants have not proved an improvement at a sinking spring, I take it for granted there is none such.

It is a maxim in law, that he who is cognizant of a fact shall prove it, and the burden of proof lies on him who holds the

Bryan *v*. Bradford.

affirmative. 1 Durnf. & East, 649 ; Law of Evid. 148–9 ; 1 Atty. Vade Mecum, 363.

For want of showing the improvement and spring, the court would certainly determine the defendants had surveyed contrary to location.

But that is proved by the defendants' own answer, for they stated that the pre-emption warrant occupies the same land as the entry on treasury warrant, and you will see by that entry and the plat, that it calls for the land covered by the settlement.

BRECKENRIDGE for the defendants.—To make a good entry, one of two things must happen, either the entry must in itself contain such certainty as would lead to the place, or to some other well known place, which would lead to it. This place was not generally known by the name of the head of Cane run, for John Todd, Jr., calls another branch by that name, and he lived as near to it as the complainant Bryan did.

It is not the head, because it is not the longest and largest branch. Tomlinson calls the branch on which Stewart lives the head, and Tandy lives on Cane run, one mile and a· half from Bryan's.

But it is said we produce improper testimony, and that we ought to show by the plat, where the head of Cane run is.

The surveyor's testimony·is only the best evidence, where he lays down what he is directed to do. Names are arbitrary, therefore a name given by hunters at Bryan's station, when not known elsewhere, can only be notice at Bryan's station.

Col. Nicholas says the complainants never could include the ·main branch of Cane run and comply with ‚the other calls of the entry. To this I answer, that the argument only proves that it is impossible to support this entry.

I come now to examine the position contended for.

That although this is not the head of Cane run, if it was called so, it is sufficient. And notwithstanding ambiguity or mistake, it may be a good call.

The cases cited by the gentleman are cases of wills, where the *benigne interpretatio* prevails, which will not apply to this case.

In the construction of wills, the intention of the party is the polar star, and in that respect those cases are not like the present, for the intention of the locator can not be sought for any where, but on the face of the entry.

Again, testators are considered as *inops consilii*. But even

where a testator makes use of technical terms, such technical terms must be construed according to their legal import. But if he uses common words, the intention must be sought. Dougl. 341 ; 3 Burr, 1634, 1581 ; 1 Ves. 146–7 ; 1 Black. 377.

Many times the law supplies the want of words in devises, which are absolutely necessary in all other instruments. 2 Black. Com. 381.

How is this doctrine applicable to the present case? Two parties claim under different rights ; the one says *benigne interpretatio* shall prevail, but by what rule I can not understand. It is not like the case of a dying man, *inops consilii*. The survey of the complainant Bryan is made contrary to his location.

The bill states the fact with some ingenuity, but it would have taken fewer words to have said he surveyed according to his location. But such is not the fact.

His settlement ought to have been surveyed in a square form, the lines running to the cardinal points, making Hall's spring his center ; for this I depend upon the rule of the old supreme court, and the case of *Hite* v. *Stevenson*.

The case of *Pawling* v. *Merewether* is also in point. There it was said, the call to include the cabin was certain, and that the other calls for the head waters, etc., should be rejected. So here, there is no greater certainty in the call for the head of Cane run, than for the head waters, and the call for the spring is certain.

This spring was certainly intended by the locator as the principal call, for he has described it three ways :

*First.* As a spring that sinks, after running about 300 yards.

*Secondly.* As being near a pond ; and,

*Thirdly.* About five miles from Bryan's station.

In addition to the rule of the late supreme court, for centering the object called for, and running to the cardinal points, it is evident such was the intention of the complainant Bryan, by his call to adjoin the settlement with the pre-emption on the south and west. His pre-emption ought then to have been surveyed equally on the south and west. By this mode of laying him off, he will get 1,386½ acres, half an acre more than his entries entitle him to.

I now come to the inquiry into the defendants' title.

Plaintiff must depend on his own strength, and not on the weakness of the defendant. 4 Burr, 2,487–8 ; 2 Ves. 90.

The claims are of equal dignity, but the defendants have the egal title.

Bryan *v.* Bradford.

It has been said the court will presume the defendant has not included his sinking spring, because he has failed to show that he has. This is not the case, for the complainants hold the affirmative; they have alleged that we have surveyed contrary to location. Gilb. Law of Evid. 52.

MURRAY for the defendants.—A complainant can only recover on the goodness of his own title. I take it for granted that the provision that the commissioners should describe as nearly as might be, the particular location, has the same meaning as that in the other law, respecting entries with the surveyor. In the case of *Pawling* v. *Merewether's Heirs*, the court declared the location of the defendant to be so vague and uncertain as to be of no validity.

The entry of the complainant was to operate as notice to subsequent locators, and taking that for granted, I will examine it.

The call for the head of Cane run, I consider not as a special call, but as a general description. It is not an arbitrary name which can be affixed to a particular place, whether true or not, because any one could ascertain which was really the head. Nor will the circumstance of the people of Bryan's station knowing this place by that name, make the call operate as a general notice. Not being a special call, and there being a special call in the entry, this must be rejected.

The intention of the complainant must have been to survey as the rule of court directs, from the call of his pre-emption entry, and this he seems to have been aware of from the cautious manner in which his bill is worded.

The cases cited to support this entry are of wills and grants, neither of which apply to a case like this.

In the first, the intention is the guide where it can be discovered, and in the second the words are to be construed most strongly against the grantor, because he is supposed to have received a consideration, and to make the grant.

The intention of a locator is never to be sought for, unless it appears on the entry, or this inconvenience would ensue :

A, who entered on the north side of Kentucky, in Fayette county, might be allowed to prove he intended his survey should be made in Mercer, on the south side.

Again : A man makes an entry which will fit two places, having before marked at both, and made some private confidential declarations respecting them. He might be allowed to claim either, and to produce parole testimony to prove either.

The situation of the complainant is not that of a grantee as to the rule of construction. For, *First*, the certificate is not a grant, and, *Secondly*, the location is his own act, which he is bound to perform, and so to make it that it will operate as a notice. By admitting parole proof to explain an entry, which is the locator's declaration how he will make his survey, you may permit him to change it, and that to the injury of another.

But let us examine if the doctrine contended for goes as far as is contended.

There are two manors of Dale, and you may prove which was intended. But if the lord of the manor of Dale had covenanted to convey to two, and given them both choice: if the one made a choice and described his choice generally and imperfectly, and then the second made his choice, and specified particularly the land he had chosen, will the authorities apply so far as to authorize the purchaser who made his first choice to explain his intention, without proof of n otice to the other, so as to interfere with the second choice? I think they will not, and this is precisely the present case. .

It is said the defendants' pre-emption is surveyed contrary to location, because it occupies the same ground as the treasury warrant had done. But this does not follow, for it only proves the pre-emption entry being special, that the defendants intended the treasury warrant should cover the same ground the pre-emption does.

BROWN for complainants.—I shall leave Col. Nicholas to reply to the observations made on the authorities produced by him.

When Mr. Breckenridge says an entry ought to be certain, is it his intention to say that parole testimony never should be admitted to support an entry? I suppose not, for this would overturn former decisions.

Again, he says the place called for ought to be certain in itself, . or be made certain by something else, also called for in the entry · which would lead to it.

This entry does answer that description.

The place might have been found by inquiry of the comrades of the complainant Bryan. And if doubtful on account of the call for the head of Cane run, the branch meant is sufficiently explained by the call for the spring, which was notorious. .

The gentleman is mistaken as to the law; he read the clause directing the mode of making entries with the surveyor, whereas the entry with the commissioners depends upon the clause direct-

Bryan *v.* Bradford.

ing them to note as particularly as may be, the particular location.

Mr. Breckenridge says we have the proof of the affirmative, because we have charged in the bill that the defendant has not included the improvement and sinking spring in his settlement survey; this doctrine can not be supported. It was necessary to state a wrong done to give the court jurisdiction, but that does not throw the proof of the negative on us.

If I state that a man owes and has not paid, am I to prove that he has not?

There is no doubt that the entry of the defendant's settlement is a vague one, and that his pre-emption is surveyed contrary to location.

NICHOLAS, in reply.—I will show we have a right to every foot of the land in contest. Mr. Breckenridge, in contending that an entry ought to contain such certainty of description as would lead to the place, or to some well known object that would lead to it, is certainly arguing from the present state of the country, and not from the situation at the time this entry was made.

If no entries were to be established but those which called for places generally known throughout the whole country at the time the entries were made, there are few entries on the books would stand the test of inquiry.

There were at the time this location was made but two stations in this part of the country: Lexington and Bryan's. And there was not a man at Bryan's, to whom this place was not known by the name of the head of Cane run.

And no names at that time from the situation of the country could be given by common consent; therefore two parties of improvers would be very likely to give different names to the same object. Information could have been got by inquiry what company the complainant Bryan belonged to, and where he resided, and from the people at Bryan's station, which branch they called the head of Cane run.

Whatever will put the party upon inquiry is sufficient notice. If we had called for *a head of Cane run*, it would have been grammatically right, and is it possible such distinctions are to deprive the first settlers of their lands?

But it is contended that the call to lay on the head of Cane run is not a call to include Cane run, and in the manner they contend we should have surveyed none of the waters of Cane run would run through the survey.

But if we are not to include the head, we certainly ought to include the branch.

Mr. Breckenridge says, in answering my observations on the authorities I produced, that the land law was made to exclude the idea of construing an entry by the intention of the locator.

If it is so, it is the first time such a law was ever made, for it is a general principle that in construing all writings you must have recourse to the intention. Treat. of Eq., 47.

Again, he says the cases of wills do not apply. I should suppose they did, better than those respecting grants, for between grantor and grantee, strong construction is admitted against the grantor.

By the construction of wills a third person is to be affected; the heir-at-law. And it is a maxim in law, that heirs shall not be disinherited, but by express words or necessary implication.

Mr. Breckenridge says, a testator is *inops consilii*. So were the hunters who made entries without assistance, and with an imperfect knowledge of the country.

I do not understand why the case from Douglas was cited, proving that where technical terms are used, their legal import must be sought, for in the land law no technical words are used, nor has the locator used any in this entry. The other cases support my doctrine, but he says mine are not applicable, because this is a case where two persons claim the same land, but surely that is also the case in a dispute respecting a will.

I admit you can't contradict a record, or supply an omission as to substance, but you may support it by parole testimony, as was done in the case of *Consilla* v. *Briscoe;* and where an ambiguity is occasioned by parole testimony, you may explain it also by parole testimony. 1 Brown Chan. Rep. 442.

In the case of *Consilla* v. *Briscoe,* the certificate called for an improvement made in 1775, and the court determined that an improvement made in 1776 was the one intended to be included. So here the place we call the head of Cane run is the place we intended.

The court were told that the case of *Pawling* v. *Merewether* was like this case, but to make it alike the proof must be rejected. In that case there was no other call but for head waters of an indefinite number, and at many miles distance. Here, if we do not prove the head of Cane run, we at least call for the run, and must lay on it, although we are mistaken as to that branch being the head. Let this be done, and lay us off in any shape, we shall include the land in dispute.

Bryan v. Bradford.

It does not follow because we have given three descriptions of the spring, that that is the only special call. Bryan would have been as special in his description of the head of Cane run, but that he supposed it to be well known, which, from his acquaintance at Bryan's, he was warranted in doing.

It is contended that the settlement ought to be surveyed in a square form, with the spring in the center. I say it is not the rule where there are more calls than one.

Mr. Breckenridge is certainly mistaken in saying we hold the affirmative.

Bradford says in his answer he has included the improvement and spring, and must prove it.

He must do it for another reason; it is a fact within his own knowledge. The case from 1 Durnford, 648, is a strong one to this point. Defendant pleaded infancy; plaintiff replied that he promised after he attained the age of twenty-one. Defendant rejoined that he did not promise after he attained the age of twenty-one. Defendant contended the plaintiff ought to prove he was of full age when he promised.

But the court said it was sufficient for the plaintiff to prove the promise, and the age would be presumed unless the defendant proved he was under age, which he ought to do, because, if so, it was a fact within his knowledge. Nothing need be said of the defendant Gatewood, for if it was necessary there is proof of notice to him.

I think Mr. Murray is mistaken in supposing the legislature meant to make the same provision as to entering specially with the commissioners as with the surveyor.

It was intended to allow a greater latitude until the opening of the land office, and the mean time was given to ascertain with precision the situation of the lands.

Mr. Murray's first case could not happen, because you could not show the intention without contradicting the entry. And the second is a trick which would defeat itself. I do not contend that the locator's telling a person he meant such a place is suffici ent, but the calling for it by a name by which it was known.

The consequence of allowing a preference to the name given, and which has been since used, is this: that as Lexington remained and Bryan's station did not, the people who lived at Bryan's would lose their claims.

BY THE COURT.—The following questions seem to be material to

this cause, to-wit: Are the locations of the complainants' settlement with the commissioners, and of their settlement and pre-emption with the surveyor such as the law requires?

*Second.* Have their settlement and pre-emption been surveyed conformable thereto, and if they have not, how ought they to have been surveyed?

*Third.* Which is the superior claim, that of the complainants, or that of the defendants?

*Fourth.* It may also be a question, did the defendant, Gatewood, purchase the land in contest from the defendant, Bradford, pay a valuable consideration, and get a conveyance therefor, before the said Gatewood had notice of the claim of the complainants thereto, and if so, has he thereby acquired a title to the land which will avail him against the claim of the complainants?

On the first question: It appears to the court that the objects called for in the location of the complainants' settlement with the commissioners and surveyor, viz: the head of Cane run, and a spring, which sinks after running about 300 yards, near a pond, and about five miles from Bryan's station, were known to the generality of those who were conversant in the vicinage of Bryan's station when these locations were made; and though the head of Cane run might have been uncertain, if this call had stood alone, it appearing that this water course had two or more forks, yet as it is called for in connection with a spring of a description which fits none other in that quarter, the head of Cane run intended is thereby ascertained to be the head of the north fork, more especially as it further appears that this was the only place at that time, to which the name of the head of Cane run had been appropriated, and that none of the heads of Cane run would so well fit the distance of five miles from Bryan's station. Therefore the court are of opinion, that these locations are sufficiently particular and descriptive; the court are also of opinion that the location of the complainant's pre-emption on the south and west sides of their settlement is sufficiently special and precise.

On the second question: It seems to the court that neither the complainant's settlement or pre-emption has been surveyed wholly conformable to the location, but that the settlement ought to have been surveyed in a right angle form, and as much longer than wide as the said head of Cane run and the said spring are distant from each other; and that they should have been respectively included in the survey, at equal distances from the bounda-

ries of the opposite sides and ends thereof; and then that the pre-emption should have been surveyed to adjoin the settlement thus laid off on the south and west, and so as that the south and west boundaries of the pre-emption should have been parallel to and at equal distances from those of the settlement.

On the third question : It appears that both parties claim under settlement and pre-emption rights of the kind which by law were to be located on vacant land. It also appears that the locations of the complainants' settlement and pre-emption with the commissioners and surveyor were severally made prior to the respective locations of the defendants' settlement and pre-emption with the commissioners and surveyor; and it further appears that the complainants' pre-emption does not interfere with the defendants' settlement; therefore the claim of the complainants, so far as they have proceeded justly and legally thereon, must be superior to that of the defendants.

As to the last question, it will be sufficient to observe that the court does not conceive the plea of the defendant, Gatewood, if it were true, to be sanctioned either by law or equity; forasmuch as the claim of the complainants is founded on a different right from that on which the said defendant Gatewood's is founded, and the complainants never gave their consent to nor encouraged the purchase made by Gatewood. Whereupon it is decreed and ordered, that the complainants do recover of the defendants all the land which will be included by a survey when run agreeably to the foregoing opinion, and which is now included within their present surveys. And costs.